This case is Long v. SEPTA, number 17-1889. Good morning, Your Honors. The Lord pleases the Court. My name is Deepak Gupta, and I represent the plaintiffs Frank Long, Michael White, and Joseph Shipley. I'd like to try to reserve five minutes for rebuttal. That will be granted. All three plaintiffs in this case have alleged that SEPTA violated the Fair Credit Reporting Act with respect to them when it failed to provide them with a copy of their background screening report and their statement of rights before denying them a job based on those reports. Mr. Gupta, let me ask you about the three individuals. With Mr. Long in your complaint, there's a paragraph that talks about the letter he received that SEPTA relied on. That sort of language doesn't appear for the other two. Does it matter? It doesn't matter, I think. We've alleged, with the specificity that we're able to allege, that SEPTA based its decision in whole or in part on these reports, and that's the language of the statute, in whole or in part. I think Congress used that language advisedly. The point is, at the pleading stage, you can't look behind the process that the employer uses, but there's a very strong inference with respect to all three that the employer based these decisions on these reports. SEPTA isn't denying that it procured reports, criminal background and history reports, with respect to all three of these plaintiffs. There's a chronological inference here, right? Because in each of these cases, the person applies for the position, interviews, completes these authorization forms, and then some time lapses, and they're told that, in some cases, they're told the offer is contingent on the background check. That's true in Mr. Long's case. He's explicitly told that. Mr. White is told to await a background check, and Mr. Shipley is actually offered the position. He gets a letter informing him that he should report for orientation, and then he's called later to say that the offer is denied because of the background check. So that is far more than in the typical case under this statute, under BB3. We've alleged far more than prospective applicants are typically able to allege, to show that the employer based the decision on these reports in whole or in part. Now, obviously, we'll have to prove that as the case is restored. We'll have to, with discovery, we'll have to elaborate upon that. But at the pleading stage, that's far more than enough. And really what I think you're going to hear from the other side when they get up is their version of their defense on the merits. What they're saying is, in effect, we based our decision on criminal history, but based on the self-disclosures that the job applicants provided. Well, let me ask you about that for a minute. I mean, we're obviously dealing with a public agency, right? Do you argue that it's not true that they have this policy in place? I mean, aside from the legality of whether they can do this, they have this policy, don't they, about certain positions? If you have a drug offense, you can't get the position. Well, I mean, one of the things that's going to have to be tested as the case moves forward is what exactly is this policy, what are the exceptions to the policy. And I think the policy is only relevant with respect to the federal claim. The state law claim, which is now in state court, that challenges the legality of the policy. But with respect to the federal claim, the question is, did they make a decision based in whole or in part on these consumer reports? And then if they did, did they make – Well, let's focus on the policy. Can you have your cake and eat it too? In the state court case, it seems you're saying, hey, there's this policy. In this case, you're kind of equivocating and saying, well, maybe yes, maybe no. What's your position as to this policy? Where do your clients bar under the policy as it stands, as far as you're aware? We don't know. I mean, we don't know exactly what the contours of the policy are. And the way – the only way in which it's relevant to the federal claim is, I think, the question of whether or not the denial of employment was based in whole or in part on the report. That's the only way in which it's relevant. SEPTA's going to clearly argue it's not in the moment because these folks could never get a job with us because we have this lifetime bar. So what do we do about that? Right. And they're free to argue that the decision was not based in whole or in part on the report. And they're free to develop facts to show that. But at this point, I think based on the complaint, as I took you through the allegations in the complaint, we've certainly alleged that they used these reports and they based the decision on the reports. And the relevant question then is, is there – the only question on appeal, right, is whether there's Article III standing at this point. And there is. And there are a lot of difficult questions after – That's what I wanted you to get to. Where's your injury factor? So in all three cases, for all three of these plaintiffs, they suffered concrete injury because they were denied the opportunity to see these background reports, to verify the completeness and accuracy of the reports, and to learn of their rights and to raise them in SEPTA. And Congress was clear about they certainly fond their rights when they fond you and their other attorneys in this case. So that may be somewhat technical, isn't it? No, because the point – Congress was very clear about this. You have to tell people about their rights and provide them with a report before the employment decision is made. That's the time in which it's relevant. And Congress – we don't have to speculate about what Congress was trying to do here. It's said in the legislative history, we're creating a right to know – those are the words that he used – so that people can tell their side of the story. Spokio changed the analysis. Spokio came after the legislation. Right. And let me point you to what I think is the most relevant part of Spokio, and that's pages 1549 through 1550. There are a lot of questions that are going to be difficult for the lower courts after Spokio, but this isn't one of them because Congress said that a plaintiff need not allege any additional harm beyond the one Congress has identified in some cases, and it cited two of its previous precedents, FEC v. Aikens and Public Citizen v. Department of Justice. Those are the key precedents here. Those precedents recognized that when Congress created a right to know – again, remember that's what they said in the FCRA legislative history – and someone alleges that there was a denial of that right with respect to them, that is sufficiently distinct injury for Article III purposes. So Congress acts, but something that supersedes what Congress can do is a constitution, and there's a case of controversy requirement, and the courts have to determine if the people who are coming forward are the right ones to challenge, to bring this case to controversy. So, you know, you can't just rely on Congress. You've got to tell us why it is, and Spokio articulates some important points about who has, in fact, an injury effect. Right, but this is the place in which Spokio discusses precisely the kind of injury at issue here, which is an informational injury, a right to know. And they look at two tests, don't they, the congressional test and the historical test of the right? Yes, those are two questions the court considers, and I think both are met here. But just to go back to Spokio itself, because I think this is the relevant passage in Spokio, and you should look at it and look at the parentheticals, the way the court describes those two cases. What you have here is far more concrete than what you had in FEC v. Aikens and in Public Citizen v. Department of Justice. In cases where you have allegations about the Federal Advisory Committee Act or the FOIA, anyone can sue under the Freedom of Information Act and request documents from the government, and the minute that they're denied, that constitutes a concrete Article III injury. Here you have a much more concrete injury, because Congress was concerned about the use of information about me when I'm applying for a job, criminal history information, that's going to affect me. What about Justice Alito's example in here about, we've read it, for example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information, regardless, may be entirely accurate. I mean, that seems to go against your argument, right? No, I don't think so. I mean, keep in mind that in Spokio, the court was dealing with a separate section of the Federal Reporting Act that was about accuracy. It was about procedures to ensure maximum possible accuracy, and so it made sense there to focus on accuracy. This is a completely different provision where we don't know. At the point that the person is denied this information, the whole point is they don't know what's in there, and so they can't challenge the accuracy. They want the report so that they know what's in it, and this is serious information. This affects people's ability to get jobs, to move past their criminal histories, and to move forward in life, and Congress understood there's a kind of cost-benefit analysis. If you're going to use this information, we are going to impose upon you the obligation, which is not too much of an obligation, that you have to send people this report and you have to tell them what their rights are. So if you look at the cost to SEPTA of complying with the statute versus the harm that it inflicts on people, it's not a tough call, and SEPTA really isn't denying that it is categorically failing to comply with this pretty minimal obligation that all employers are charged with, which is if you're going to use this information, you have to provide people with notice of their rights. Is this a case where the district court dismissed this complaint under 12b-1, and the issue before us is whether or not your clients have standing? Is this a case that could go back and your complaint could end up being dismissed under 12b-6? That's always a possibility, right? Since that wasn't dealt with? That's always a possibility. I know it's a possibility, but that potential procedurally exists here, does it not? I don't think so, because I think the defense that they're making, which is that we have this policy and so we didn't use the reports in whole or in part, that has to be tested. You can't just take their word for it, what the policy is, and I think there's a very strong inference here just based on the chronology that they are in fact using these reports. This is why I said in response to Judge Restrepo's first question that it's pretty important that Congress said in whole or in part based on these reports. Congress set up a scheme here, and it would be so easy to nullify the scheme if any employer could say, well, you know, we used the reports, but we would have based this decision on something else, right? You would effectively nullify the scheme. Nobody would be able to sue under this statute, and then employers would have no incentive to comply with it. If I may, I'd like to reserve the remainder of my time for a run-up. That's fine. Thank you. Thank you, counsel. May it please the Court, my name is Elizabeth Malloy, and the panel has already quoted the exact language in Spokio that I wanted to immediately refer to you, and Spokio is dispositive of the case. These are quite unusual facts, but the plaintiffs are the master of their complaint, and opposing counsel spoke very often of we could argue this, we could argue that. We are dealing with a complaint that was in front of the district court and a complaint that is in front of us right now. So address Mr. Long specifically. Do you dissipate the position that in the case of Mr. Long, he complied with the statute? Your Honor, I think that goes beyond the complaint. I would mention, though, that... On the face of the complaint. On the face of the complaint, there is no allegation that we did not comply with the statute. The plaintiff refers in many circumstances that they voluntarily disclosed their criminal histories, and that the decision was made on criminal histories, which is not a defined term. They say they disclosed their criminal histories, and then they tie it to what the plaintiffs characterize as this lifetime ban on individuals with drug felonies. The merits of the Chima claim are not before this court. Let me go back to Mr. Long, specifically paragraph 47. Do you have the complaint in front of you? I do. So... So based on... How is that... How does he not have standing in light of paragraph 47? Well, if you go back to paragraph 44, Your Honor, it says in late October, the recruiter called Mr. Long revoking the offer of employment based on his previous criminal history, not tied to the Fair Credit Reporting Act. But you don't dispute the set that didn't provide him with the opportunity to respond to the letter? Your Honor, I can't dispute it or not because we're only based on the complaint. Okay. Yes. But I would also... Is your attack on the complaint, was it a facial attack or a factual attack? It is a facial attack. It is a facial attack. But the facts of this case are so narrow. When you look at the policy being challenged, the fact that the individuals disclosed their criminal history, they do not allege in any way that the credit reports were inaccurate. In fact, they seem to infer that they were accurate. Does the statute require that? Does the statute require that? With respect to the challenge they're bringing, does the statute require that? I believe that's what Spokio says. The statute in question. The statute in question. What does the statute in question require? The statute in question, as they challenge it, requires that the credit report be, it's a pre-adverse notice requirement, that it be given to the employees in advance of any decision. In the face of the complaint, specifically Mr. Long, that didn't happen? Just on the face of the complaint? I would respectfully disagree with that, Your Honor, because in paragraph 44, they're saying the offer was revoked based on the criminal history, and that's chronologically before it got to the credit report. That's before the letter was identified. But we don't know on the face of the complaint when SEPTA had the information contained in the letter. Well, the plaintiffs don't allege that they had the offer. How could they know that without taking a discovery? Because Article III is a very important issue to standing, and that maybe there is another plaintiff out there somewhere, they're alleging a class action, but that on the plaintiff's side, or who are the plaintiffs in this case, that they cannot determine the standing because they have not alleged that the credit reports were inaccurate. They have not alleged, based on their policy argument, that the decisions were based on that. Do they need to allege the reports were inaccurate for purposes of the statute at issue? I believe they do for purposes of standing to prove that they were harmed, and there was multiple cases in which other district courts have found that plaintiffs do not allege inaccurate, plaintiffs do not allege inaccurate, particularly after Spokio, where the precise example is that the credit reports can be accurate, and then the harm doesn't flow from that. What the plaintiffs, I think, are challenging in this case is how SEPTA treats accurate information. That's why they're tying it to the policy. What the plaintiffs are challenging is that they weren't provided with notice. That doesn't mean that there's harm, though. I agree with you, Your Honor, that they're challenging that they were not given the pre-adverse notice, but under these facts, it does not go to the harm. The harm here under the statute is you're supposed to be given pre-adverse notice warning. So that's the harm we're talking about, at this level, again, at this level. But the Article 3 cases, which has to be established before you get to the merits of the Fair Credit Reporting Act or the Cheever case, says that the harm has to be tied to the purpose of the statute, the harm that the statute was enacted to prevent. In the Fair Credit Reporting Act context, that's either invasion of privacy or to prevent credit agencies from sloppily pulling together inaccurate information. And I disagree with our opponent in the informational injury cases that he referenced. An informational injury can be, possibly can be a harm, concrete enough for Article 3 standing, but the cases are very clear that it has to be tied to the purpose of the statute and the voting right cases the Supreme Court found were not. Can I ask you, I know it may not be in the complaint, but what is your policy on criminal drug violations in these positions? I certainly have to preface it by that goes to the merit of the complaint. The part of the policy, it's a long policy, but the part of the policy that they're challenging is a ban on felony drug convictions in certain positions. Is this a matter of public record? Is this something we can take judicial notice of? It's not attached to the complaint in any way. Right, but can we take judicial notice of it? You're a public agency, right? Your Honor, I would believe so, but I don't particularly. I could reference that in a short amount of time. Let's get back to something more concrete. So I guess I'm having trouble understanding. You're throwing out the purpose of the statute to try to overcome the language of the statute, and I want to look at the text of the statute, and the text of the statute seems to say that you have to give notice before taking an adverse action, and these plaintiffs and others have stepped forward and said, we didn't get notice, and they've made other allegations about the set of processes. I'm having trouble understanding why they haven't expressed, at least as to the notice, a concrete injury in fact, which is particularized to that. Your Honor, I believe that's addressed in the Supreme Court opinions, and even in Spokio, where they say a plaintiff cannot automatically satisfy an injury in fact requirement, just because a statute gives you a statutory right, and you make a claim that the right has been violated. That a violation of a statutory mandated information can cause the injury, if the harm is the type that the Congress meant to prevent. The harm here was the notice before taking an adverse action, and isn't that what Mr. Long has pled? I don't believe so, Your Honor, to repeat myself, because of the paragraph 44, and also because of their pleadings that he was not hired because of his criminal history information. He hasn't pled that there were inaccuracies, or that anything would have made a difference. I'm reading from the statute. Before taking any adverse action based on whole or part of the report, the person intended to take such adverse action shall provide to the consumer to whom the report relates, a copy of the report, etc. Where is there any suggestion about the accuracy at this stage? Because the Supreme Court has said that Article 3 standing is not satisfied, just because you claim that there was a statutory violation. And the harm here is that you don't get the report, so you're not in a position to respond. Isn't that sufficient harm? In this context, though, and it's why I keep going back to these are extraordinarily narrow facts, and not a case where the panel has to write on Article 3 standing in general, because it's specifically addressed by Spokio. I believe they do need to plead. And maybe Mr. Long is not the perfect plaintiff, but we do need to plead. This whole Spokio question, I mean, the Supreme Court spoke in Spokio, and I think if anything in Spokio they said, wait a minute, there's two parts of injury in fact. One is particularity and the other is concreteness. And then we've had the opportunity as a court to interpret that question, and particularly in the case of Verizon Healthcare Services, the data breach, we said that we look back at Google. The Google opinion and Nickelodeon opinion, which provide clarity on the standing issue, were decidedly in favor of allowing individuals to sue to remedy violations of their statutory rights, even without additional injury. So, you know, we can't ignore either what we said in Google, because I don't believe that Spokio said that what we said in Google was wrong. We can't ignore what we said in Nickelodeon, and we can't ignore what we said in Verizon. So you seem to be arguing contrary to all, at least as to Verizon, in your argument, and as to the injury question, because it's not tied into the purpose of the statute. I don't believe our argument at all, Your Honor, is inconsistent with those three cases. This court specifically said in Verizon that it's clear from Spokio that there are some circumstances where a mere technical violation of a procedural requirement cannot be an injury in fact, but in Verizon the court said we have no reason to go there right now. I would suggest, given the language in Spokio we've been talking about, there's no reason to go here either. But in the Verizon healthcare case, Your Honor, and also in Cicino, which shortly followed that Cicino v. Workout World, the court said when a plaintiff sues under a statute alleging the very injury, the very injury the statute intended to prevent, and I believe in this portion of the Fair Credit Reporting Act, the injury is inaccurate information, not accurate information, and the injury has a close relationship to the harm traditionally providing a basis. And in the Verizon case, that had to do with the encrypted laptop, and that was the harm. You keep going back to this inaccurate information. And at this level, how is anybody supposed to know if the information is accurate or inaccurate if they're never given the opportunity to respond? How is somebody supposed to determine whether the information is accurate or inaccurate? At this level, when they don't have the report and the statute, the purpose of the statute, could be read that the individual is entitled to a copy of the report and notice as to what their rights are. And how would that have made any difference when they're pleading in this case that they were not hired under this blanket policy? Is that the issue? Is that the issue? That's a merits issue. We're talking about a standing under a very specific statute where accuracy or inaccuracy is really not of the moment. But they can plot all this in the same complaint, so it is a pleading case. They're a pleading issue. They're pleading that they were not hired because of their criminal history record information, not anything in the Fair Credit Reporting Act. Their defense, as I understand, is hey, they'd never get the job anyway, so no harm, no foul. That's their allegation. That's your defense. No harm, no foul because they wouldn't have gotten the job anyway. But the statute is much more specific. The standing issue is much more specific than that. Your Honor, I respectfully disagree. And I think that concept then would make Article III standing in any Fair Credit Reporting Act case. And Spokio and other Supreme Court cases and as well as cases of this panel have made it clear that Article III standing is a very, very, very important concept that we can't give short shrift to. I'm not saying that there's not a case out there where your concept wouldn't apply. But I don't believe it's a case based on a complaint. But that case, in your view, would be one where there was inaccurate information and it was relied upon. It was relied upon and it made a difference. But how would anybody be in a position to challenge it if they were never given the report and never given an opportunity to challenge the information, which is the purpose of the statute? I hear what you're saying. But in this complaint, it's tied to the policy. That's the complaint the plaintiffs brought. They did bring a justa. You didn't give me the preadverse notice. They brought a complaint saying ANSAFDA violated this policy because based on our criminal histories, also which we voluntarily disclosed, we were not given the job. I believe, as I've mentioned a couple times, this is extraordinarily narrow facts. But that's the complaint that we're dealing with in this case. Let me ask you a question. You have a state court matter that's going. If you lose there, let's say they prove their case and the Pennsylvania State Court says this is an improper policy. How does that affect our case, or does it, or does it not? I think the merits obviously don't affect this case. But the way that the plaintiffs have decided to bring it and plead it is the complaint that we're dealing with in this case. So you can hold this case in the bay as well as the Pennsylvania State Court makes that decision? The Pennsylvania State Court has dismissed it at this point without prejudice pending your opinion. Okay. A little Christmas present or something. Great. Thank you, Your Honor. Okay, thank you. Thank you, counsel. That's true. Thank you. First, on the relevance of SEPTA's policy, you know, I think as some of the questions spread out, the policy isn't before you. They're making a preview of what their merits defense is, and they're entitled to flesh that out on the merits. But the question before you is whether there's Article III standing to allege at the pleading stage that there's a violation of a statutory provision that creates a statutory right to know. And so it's the statutory right to know cases that I think are most relevant to your Article III standing analysis. And I've pointed you to Public Citizen v. Aikens, Public Citizen v. Department of Justice and FECs v. Aikens, which I think were reaffirmed in Spokio. And I think just to think about the accuracy argument that's being made on the other side here, take that argument and then point it to the facts of those cases. You know, that's not how these Freedom of Information Act cases work. That's not how FACA cases work. The person who's alleging a violation of the statute doesn't have to show that there's some particular purpose for the information that they want or that the information that they haven't seen is inaccurate, because, of course, they can never do that. That would be absurd. I do want to point out, though, that there is something really different about the self-disclosure or criminal history information that SEPTA is relying on for their policy argument and the kind of information that you would find in these reports that my clients want to see. And this goes not to maybe the legal argument of Article III standing, but I think maybe it helps to explain to you why this matters so much in the real world, why we want these reports and why this isn't just some technical problem we're complaining about. If you look at these reports, they have much more robust information than the kind of few sentences or words that are in these self-disclosures. They provide information that could be redundant. They provide information that could be mitigating circumstances. They may have information that's obsolete. They may have arrest information that shouldn't be taken into account at all. And it's critical, if people are going to move past their criminal histories and become productive members of society, that they be able to have that information, know what's being used against them, take any steps necessary to fix the information, and move forward. And that matters for the particular position they're applying to with SEPTA now. It may matter for another job that they're applying to with SEPTA in the future. It may matter for other employers that they seek employment with. So this is not some hyper-technical problem that we're complaining about. The reason we are here is that this matters quite a lot in the real world. That isn't to say, though, that the legal analysis is complicated or needs to take all of that into account, because Congress is the branch of government that's charged with making these kind of predictive judgments. Congress understood that there were real-world consequences of not giving people this information, and that's why they created this statutory right to know. And in statutory right to know cases, as opposed to lots of other Article III standing cases, the judicial inquiry is pretty darn easy. If this were a FOIA case and I were complaining about the government not providing me a photograph of Richard Nixon meeting in the Oval Office with Elvis because I wanted that photograph, and I didn't have to explain to you why I want that photograph. The government is denying it to me. Anyone can ask for it. There's Article III standing. It's absolutely clear. Why should Article III standing be any less clear in a circumstance where people are asking for that, for asserting the same kind of statutory right to know for information that's about them, and that affects whether their criminal history is going to dog them for the rest of their life or whether they're going to be able to become productive members of society. So this is not some hyper-technical problem. This is a real harm that is ongoing when you have a policy like SEPTA has of just willfully failing to comply with the minimal requirements of federal law. Thank you. Thank you, counsel. We'll take the case under advisement and thank counsel for their arguments, both oral and written. And we'd like to meet you at sidebar, but in the meantime, let's have the clerk.